UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARTNER, INC., Plaintiff | **Jury Trial Demanded** |
| v. | No. |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant | March 14, 2008 |

# COMPLAINT

Plaintiff, Gartner, Inc. ("Gartner") through its undersigned counsel, for its complaint, hereby alleges, on knowledge as to its own conduct, and otherwise on information and belief, as follows:

## Summary of Claims

1. Gartner brings this action to recover amounts it paid to settle an earlier lawsuit, and consequential damages, after Gartner's commercial general liability insurer, defendant St. Paul Fire and Marine Insurance Company ("St. Paul'"), breached its obligations to defend and indemnify Gartner in connection therewith. Gartner, individually and as assignee of Zurich American Insurance Company ("Zurich"), also seeks legal fees and costs Gartner incurred in connection with defending the claims asserted against Gartner in the earlier lawsuit. As fully alleged below, St. Paul's repeated denials of coverage, and its failure to investigate the subject claims prior to asserting those denials, constitute bad faith

and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA").

**The Parties**

2. Gartner is a Delaware Corporation with its principal place of business in Stamford, Connecticut.

3. St. Paul is a Minnesota corporation with a principal place of business in St. Paul, Minnesota. St. Paul is licensed to conduct insurance business in Connecticut and at all times pertinent to this lawsuit conducted business throughout the state of Connecticut.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 since the plaintiff and defendant are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75.000.00.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

**The ECI Lawsuit**

6. On or about December 23, 2003, Expert Choice, Inc. ("ECI") commenced an action against Gartner in the United States District Court for the District of Connecticut, captioned *Expert Choice, Inc. v. Gartner, Inc.*, 3:03CV02234 (CFD) ("ECI Suit").

7. Gartner timely notified St. Paul of the ECI Suit and tendered the defense of the ECI Suit to St. Paul.

8. ECI subsequently amended the complaint on April 19, 2004 (the "Amended Complaint"). Gartner forwarded a copy of the Amended Complaint to St. Paul.

9. The Amended Complaint alleged that, in the early 1970's, one of the founders of Expert Choice, Inc. ("ECI"), a computer software company, developed a decision-making methodology which was called the Analytical Hierarchy Process ( "AHP"). Amended Complaint, ¶ 5; AHP was designed to assist individuals and groups in making complex purchasing decisions where there are multiple criteria and conflicting objectives. Amended Complaint, ¶ 5.

10. The Amended Complaint further alleged that in the early 1990's, Gartner became interested in Expert Choice's software and methodology. Amended Complaint, ¶ 10. According to ECI, in May 1995, Gartner created a new subsidiary, Decision Drivers, Inc. ("DD"), for the purpose of entering into a licensing agreement with ECI. Amended Complaint, ¶ 11. Under the licensing agreement, ECI granted DDI a license to use, copy and make derivative works from ECI's software in exchange for specified royalty payments. Amended Complaint, ¶ 12. The licensing agreement was subsequently replaced with a second licensing agreement, which provided for a different method for calculating royalties. Amended Complaint, ¶¶ 25, 26.

11. The Amended Complaint alleged Gartner "represented to Expert Choice that it would use its distribution and sales network to market and sell software produced by DDI and

would provide all of the financial resources necessary for DDI to succeed." Amended Complaint, ¶ 15.

12. Instead of taking the concept AHP and related product developed by DDI, which was titled "Decision Drivers," and promoting them together as the best way to make complex IT decisions, ECI alleged that Gartner created its own decision support product, which it then marketed and advertised under the confusingly similar title or slogan, "Decision Engine." Amended Complaint, ¶¶ 54-56.

13. Moreover, the Amended Complaint alleged that Gartner also wrongly used the "Decision Drivers" title or slogan, which allegedly belonged to ECI, to advertise and promote its own "Decision Engine" product and other products. *See* Amended Complaint, ¶ 64.

14. The Amended Complaint alleged that sometime after Gartner launched its "Decision Engine" software tool in October 2000, "Gartner began to franchise to 'external service providers' ('ESP's') its Decision Drivers' software measurement tools and methodologies via its 'Decision Drivers Alliance Program'", under which Gartner "marketed . . . the Decision Engine tool itself." Amended Complaint, ¶ 64.

15. According to the Amended Complaint, the Decisions Drivers Alliance program was advertised as an "'opportunity' for ESP's to use Gartner's world-class resources and

Decision Drivers' products to supplement an existing consulting practice or to quickly start a needs assessment and vendor analysis practice." Amended Complaint, ¶ 65.

16. ECI alleged that Gartner also advertised that the Decision Drivers Alliance Program would help an ESP to "'raise its level of client contact and drive follow-on sales with Gartner's selection models,' of which 'there are more than 30 decision models available.'" Amended Complaint, ¶ 67.

17. The Amended Complaint also alleged that:

a. Gartner failed to identify Expert Choice on packaging for Expert Choice based software that Garter was marketing and selling, Amended Complaint, ¶ 80;

b. ECI suffered injury by virtue of Gartner's marketing of general purpose decision making software. Amended Complaint, ¶ 81;

c. "Gartner's development, marketing and sale of its 'Decision Engine' software product and related products caused ECI substantial injury." Amended Complaint, ¶ 107; and

d. As a direct and proximate result thereof, Expert Choice has been damaged. Amended Complaint, ¶ 108.

18. The allegations from the Amended Complaint, asserted above, among others, were the basis of numerous claims against Gartner, including a claim for unfair trade

practices. Moreover, ECI incorporated all of the previously stated allegations from the Amended Complaint into count twelve, entitled Copyright Infringement, in which ECI expressly alleged that Gartner's advertising infringed on ECI's copyright.

19. In Count Twelve of the Amended Complaint, ECI alleged that "[w]hen [Gartner] . . . commenced to market its 'proprietary' Decision Engine," Gartner "infringed upon the copyright held by Expert Choice." The Amended Complaint also alleges that Gartner had continued to market this and related software products to the present." Amended Complaint, ¶ 146. "As a direct and proximate result, Expert Choice has been damaged." Amended Complaint, ¶ 147.

20. The ECI Complaint also alleged that as a centerpiece of Gartner's overall strategy, Gartner "misrepresented ECI's product and technologies as obsolete . . . ," and that "[a]s a result, Gartner was able to launch a competing AHP product to customers who would otherwise have purchased AHP software from Expert Choice." Amended Complaint, ¶ 74.

**The Policies**

21. St. Paul issued to Gartner, a Technology Commercial General Liability Protection policy, number TE09001737, effective June 30, 2002 to June 30, 2003 (the "Policy").

**Advertising Injury and Personal Injury Coverage**

22. Under the Policy's "advertising injury" coverage, St. Paul was obligated to pay any amounts Gartner was required to pay as damages for "covered advertising injury" that "results from the advertising of your products, work, or completed work; and is caused by an advertising injury offense committed while this agreement is in effect."

23. The Policy defined "advertising injury" as "injury, other than bodily injury or personal injury, that's caused by an advertising injury offense."

24. "Advertising injury offense" was defined in the Policy as including the following offenses:

- Making known to any person or organization written or spoken material that disparages the products, work, or completed work of others. . . .

- Unauthorized use of any advertising material, slogan, or title of others in your advertising.

25. The terms "advertising material", "slogan", and "title of others" were not defined in the Policy.

26. The Policy defined advertising as "attracting the attention of others for the purpose of seeking customers or increasing sales or business."

27. The Policy also obligated St. Paul to pay for amounts Gartner is legally obligated to pay as damages for "covered personal injury" that "results from your business

activities, other than advertising, broadcasting, publishing, or telecasting done by or for you; and is caused by a personal injury offense committed while this agreement is in effect."

28. The Policy defined "personal injury" as "injury, other than bodily injury or advertising injury that's caused by a personal injury offense."

29. Personal injury offense was defined in the Policy to include: "[m]aking known to any person or organization written or spoken material that disparages the products, work or completed work of others."

30. The Policy further required St. Paul to defend "any protected person against a claim or suit for injury or damage covered by this agreement . . . even if all of the allegations of that claim or suit are groundless, false, or fraudulent."

31. The Policy was subsequently renewed effective June 30, 2003-June 30, 2004.

32. St. Paul also issued to Gartner a Commercial General Liability Policy, number TE09009078, effective June 30, 2004-June 30, 2005, and number TE09009938, effective June 30, 2005-June 30, 2006. The policies effective June 30, 2003-June 30, 2004, June 30, 2004-June 30, 2005, and June 30, 2005-June 30, 2006 also provided "advertising injury" coverage and "personal injury" coverage (hereinafter, the St. Paul policies, effective from June 30, 2002 through June 30, 2006 will collectively be referred to as the "Policies").

33. St. Paul also provided Gartner with Excess Umbrella Liability coverage during each of the policy periods in which the Policies were in effect. Those policies also provided "advertising injury" coverage and "personal injury" coverage.

34. The ECI Suit alleged advertising injury and/or personal injury under the St. Paul Policies.

**St. Paul's Wrongful Disclaimers of Coverage**

35. By letter dated February 11, 2004, St. Paul disclaimed coverage of the ECI Suit on the basis that ECI was not seeking injury or damages covered by the St. Paul Policies. St. Paul also relied on several exclusions to disclaim coverage under the Policies, including an Intellectual Property exclusion, Material Previously Made Known exclusion, and Breach of Contract exclusion.

36. The Intellectual Property exclusion (the "Intellectual Property Exclusion") excludes from coverage "injury or damage that results from any actual or alleged infringement or violation of any of the following rights or laws," including copyright, patent, trade dress, trade name, trade secrets, trademarks, or other intellectual property rights or laws.

37. The Intellectual Property exclusion contains an exception which provides that the exclusion will not apply to "advertising injury that results from the unauthorized use of any copyrighted or trademarked material, slogan, or title of others in your advertising."

38. The Material Previously Made Known exclusion excludes "personal injury or advertising injury that results from written or spoken material which was first made known before this agreement went into effect."

39. The Breach of Contract exclusion excludes "advertising injury that results from the failure of any protected person to do what is required by a contract or agreement."

40. By letter dated June 28, 2004, Gartner challenged St. Paul's denial of coverage arguing that St. Paul was obligated to acknowledge coverage both under the advertising injury coverage and personal injury coverage of the St. Paul Policies.

41. Gartner explained that the Intellectual Property exclusion did not relieve St. Paul of its duty to defend or indemnify Gartner in the ECI Suit. The Intellectual Property exclusion only applies to advertising injury that results from the actual or alleged infringement of the enumerated and other intellectual property rights or laws. ECI's claims against Gartner included claims in addition to the copyright infringement claim, such as a claim for unfair trade practices, which fell outside the Intellectual Property exclusion.

42. To the extent the injury or damage alleged by ECI against Gartner resulted from any actual or alleged infringement or violation of any of copyright, patent, trade dress, trade name, trade secrets, trademarks, or other intellectual property rights or laws, the exception to the Intellectual Property exclusion for "advertising injury that results from the

unauthorized use of any copyrighted or trademarked material, slogan, or title of others in your advertising" applied.

43. Gartner also explained that the Material Previously Made Known exclusion did not relieve St. Paul of its duty to defend and indemnify Gartner in the ECI Suit. Neither the Complaint nor the Amended Complaint alleged the time at which the alleged unauthorized use of advertising material, slogan, or title of others first took place.

44. The Breach of Contract exclusion also did not relieve St. Paul of its duty to defend and indemnify Gartner in the ECI Suit. The Amended Complaint alleges claims against Gartner for copyright infringement, misappropriation and unfair trade practices, among others, none of which require a finding that a breach of contract occurred.

45. By letter dated December 24, 2004, St. Paul informed Gartner that it had reviewed both the initial Complaint and Amended Complaint and that it was maintaining its original coverage disclaimer.

**The Mediation and Settlement of the ECI Suit and St. Paul's Continuing Failure to Defend Gartner**

46. ECI and Gartner subsequently agreed to participate in a mediation of the ECI Suit, which was scheduled for May 30, and May 31, 2007. By letter dated March 28, 2007, Gartner informed St. Paul of the scheduled mediation and requested that St. Paul reconsider its prior denials, and reiterated its request that St. Paul participate in Gartner's defense, including the mediation.

47. In support of its request for reconsideration, Gartner provided St. Paul with copies of expert reports submitted by the plaintiff, the plaintiff's mediation statement, correspondence from plaintiff's counsel, and relevant deposition transcripts.

48. By letter dated May 17, 2007, Gartner further pointed out that the expert reports and other extrinsic evidence confirmed that ECI's claims against Gartner were for the unauthorized use of advertising material, slogan or title of others in Gartner's advertising, within the scope of coverage afforded by the Policies and demanded that St. Paul acknowledge coverage and contribution toward any settlement.

49. Notwithstanding the extrinsic evidence provided by Gartner to St. Paul, St. Paul refused to participate in the mediation. St. Paul did not request to review any additional documents, pleadings or deposition transcripts. Nor did St. Paul request a meeting with Gartner or Gartner's defense counsel to discuss the ECI Suit.

50. At the mediation, ECI and Gartner agreed to settle the ECI Suit. Gartner's other insurers agreed to contribute only partially toward the settlement, leaving Gartner responsible for a significant portion of the settlement, which was not funded by insurance.

51. On or about July 30, 2007, Gartner and ECI formally memorialized the Settlement Agreement ("Agreement").

52. On or about August 2, 2007, Gartner transmitted the full amount of the Settlement Payment called for under the Agreement, including the amount that was not funded by insurance and was paid by Gartner.

**Zurich's Defense of Gartner and the**
**Assignment of Zurich's Claims Against St. Paul**

53. At the time the ECI Suit was filed against Gartner, in addition to being insured by St. Paul, Gartner was also insured under a series of commercial general liability policies issues by Zurich American Insurance Company ("Zurich").

54. In order to protect its own interests, Zurich agreed to defend Gartner in connection with the ECI Suit under a reservation of rights, and reimbursed Gartner for a substantial portion of the costs and defense expenses incurred by Gartner in the ECI Suit. Zurich reimbursed Gartner approximately $3,298,000 for costs and defense expenses incurred in connection with the ECI Suit.

55. In addition, approximately $130,000 in defense costs incurred by Gartner was not reimbursed by Zurich.

56. On or about July 30, 2007, Zurich and Gartner entered into a Settlement Agreement and Release (the "Zurich Agreement").

57. Under the Zurich Agreement, Zurich "assign[ed], transfer[ed] to, assign[ed] and confer[ed] upon Gartner all its rights against any other insurer of Gartner for contribution

or subrogation or similar relief with respect to Gartner's claims for insurance coverage, payment and/or indemnification," in connection with the ECI Suit.

**COUNT I**
**(Breach of Contract)**

58. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 57.

59. St. Paul's Policies obligated St. Paul to defend and indemnify Gartner for the claims asserted in the ECI Suit.

60. Gartner provided St. Paul with timely notice of the ECI Suit.

61. St. Paul breached its obligations under the Policies by denying a defense and indemnity to Gartner for the claims asserted in the ECI Suit.

62. Gartner has been damaged as a result of St. Paul's refusal to honor its obligations under the Policies.

**COUNT II**
**(Breach of Implied Covenant of Good Faith)**

63. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 62.

64. St. Paul was obligated to act in good faith towards Gartner.

65. St Paul has acted unfairly, deceptively and in bad faith by denying coverage and a defense and indemnity to Gartner in the ECI Suit because it knew its denial was contrary to the plain language and the purpose and intent of the Policies.

66. St. Paul's conduct, including but not limited to the actions above, was intentional, wanton or recklessly indifferent to Gartner's rights.

67. Gartner has been damaged as a result of St. Paul's bad faith and unfair and deceptive actions.

**COUNT III**
**(Violation of Connecticut Unfair Trade Practices Act)**

68. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 67.

69. St. Paul was and is at all times pertinent to this lawsuit a "person" within the meaning of Conn. Gen. Stat Section 42-110(a)(3).

70. St. Paul was and is at all times pertinent to this lawsuit engaged in trade or commerce within the State of Connecticut within the meaning of Conn. Gen. Stat. Section 42-110(a)(4).

71. St. Paul violated the provisions of Conn. Gen. Stat. Section 42-110a, et seq. by committing unfair and/or deceptive acts and practices in the business of insurance, as prohibited by Conn. Gen. Stat. Section 38a-816(6), the Connecticut Unfair Insurance Practices Act ("CUIPA").

72. The unfair and/or deceptive acts and practices committed by St. Paul included, among other things, denying coverage for the ECI Suit without having investigated the claim, which investigation would have demonstrated that the ECI Suit was covered under the St. Paul Policies; failing to acknowledge and act with reasonable promptness upon communications with respect to the St. Paul Policies, and not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear.

73. St. Paul has engaged in unfair claim settlement practices in handling other insureds claims as well, including, but not limited to: failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies; failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; refusing to pay claims without conducting a reasonable investigation based upon all available information; and not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

74. St. Paul has engaged in these and other unfair claim settlement practices with such frequency as to indicate a general business practice.

75. The deceptive and/or unfair acts and practices were committed in the course of St. Paul's trade and/or business and are unfair, deceptive, immoral, unethical, oppressive and/or unscrupulous and have injured Gartner.

76. St. Paul's deceptive and/or unfair acts and practices conduct, including but not limited to the actions above, were intentional, wanton or recklessly indifferent to Gartner's rights. Gartner suffered an ascertainable loss of money or property as a result of St. Paul's unfair and deceptive acts and practices.

**COUNT IV**
**(Targeted Tender)**

77. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 76.

78. St. Paul was obligated to defend and indemnify Gartner in connection with the ECI Suit.

79. Gartner had the right to choose which carrier would defend and indemnify it in connection with the ECI Suit.

80. When Gartner tendered the ECI Suit to St. Paul and reiterated its request for a defense, Gartner intended to make St. Paul the exclusive insurer covering the defense of the ECI Suit, because St. Paul wrongfully disclaimed coverage.

81. St. Paul breached its obligations under the Policies by denying a defense and indemnity to Gartner for the claims asserted in the ECI Suit.

82. Because Gartner was allowed to selectively tender the ECI Suit to St. Paul, Zurich was not obligated to pay for the defense cost incurred by Gartner in connection with the ECI Suit, and Gartner, individually and as Zurich's assignee, is entitled to reimbursement for the full amount of defense costs incurred by Zurich and Gartner in connection with the ECI Suit.

**COUNT V**
**(Contribution)**

83. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 82.

84. St. Paul was obligated to defend Gartner in connection with the ECI Suit. By virtue of Zurich's payments to defend Gartner in the ECI Suit, Gartner, as Zurich's assignee, is entitled to contribution from St. Paul toward that defense.

85. Because Garter selectively tendered the ECI Suit to St. Paul, Zurich was not obligated to pay for the defense costs incurred by Gartner in connection with the ECI Suit, and plaintiff Gartner, as Zurich's assignee, is entitled to reimbursement for the full amount of defense costs incurred by Zurich in connection with the ECI Suit. In the alternative, even if Zurich was obligated to contribute to the defense costs incurred by Gartner in connection with the ECI Suit, St. Paul is required to reimburse Gartner, as Zurich's assignee, for at least fifty percent of the defense costs incurred by Zurich in connection with the ECI Suit.

**COUNT VI**
**(Unjust Enrichment)**

86. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 85.

87. St. Paul was obligated to defend and indemnify Gartner in connection with the ECI Suit.

88. By virtue of St. Paul's failure to pay for Gartner's defense in the ECI Suit and St. Paul's failure to indemnify Gartner for the settlement of the ECI Suit, St. Paul has been unjustly enriched.

89. Gartner is entitled to reimbursement for the full amount of defense costs incurred in connection with the ECI Suit, and all amounts paid by Gartner to settle the ECI Suit.

**COUNT VII**
**(Unjust Enrichment – As Assignee)**

90. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 89.

91. St. Paul was obligated to defend Gartner in connection with the ECI Suit. By virtue of Zurich's payments to defend Gartner in the ECI Suit and St. Paul's failure to pay for the defense of Gartner, St. Paul has been unjustly enriched.

92. Because Garter was allowed to selectively tender the ECI Suit to St. Paul, Zurich was not obligated to pay for the defense costs incurred by Gartner in connection with the ECI Suit, and Gartner, as Zurich's assignee, is entitled to reimbursement for the full amount of defense costs incurred by Zurich in connection with the ECI Suit. In the alternative, even if Zurich was obligated to contribute to the defense costs incurred by Gartner in connection with the ECI Suit, St. Paul is required to reimburse Gartner, as Zurich's assignee, for at least fifty percent of the defense costs incurred by Zurich in connection with the ECI Suit.

**COUNT XIII**
**(Equitable Subrogation)**

93. Gartner repeats and incorporates by reference the allegations of paragraphs 1 through 92.

94. St. Paul was obligated to defend Gartner in connection with the ECI Suit.

95. St. Paul failed to pay for the defense of Gartner in connection with the ECI Suit.

96. Zurich reimbursed Gartner for costs and defense expenses incurred by Gartner in connection with the ECI Suit.

97. Zurich was not acting as a volunteer in making payments on behalf of Gartner to defend the ECI Suit, but was acting to protect its own interests.

98. Because Garter selectively tendered the ECI Suit to St. Paul, Zurich was not obligated to pay for the defense costs incurred by Gartner in connection with the ECI Suit, and Gartner, as Zurich's assignee, is entitled to reimbursement for the full amount of defense costs incurred by Zurich in connection with the ECI Suit under the doctrine of equitable subrogation. In the alternative, even if Zurich was obligated to contribute to the defense costs incurred by Gartner in connection with the ECI Suit, St. Paul is required to reimburse Gartner, as Zurich's assignee, for at least fifty percent of the defense costs incurred by Zurich in connection with the ECI Suit under the doctrine of equitable subrogation.

WHEREFORE, Gartner prays for judgment as follows:

(1) On its first claim for relief, the actual and consequential damages suffered by Gartner as a result of St. Paul's breach of its obligations under the Policies;

(2) On its second claim for relief, the actual and consequential damages suffered by Gartner as a result of St. Paul's bad faith denial of coverage; and Gartner's attorney's fees and costs, and punitive damages.

(3) On its third claim for relief, the actual and consequential damages suffered by Gartner as a result of St. Paul's bad faith denial of coverage and St. Paul's unfair and/or deceptive acts; and Gartner's attorney's fees and costs, and punitive damages.

(4) On its fourth claim for relief, the costs incurred by Zurich and Gartner in defending the ECI Suit, plus interest;

(5) On its fifth claim for relief, the costs incurred by Zurich in defending the ECI Suit, plus interest;

(6) On its sixth claim for relief, the full amount of defense costs incurred in defending the ECI Suit, plus interest, and the amount paid by Gartner to settle the ECI Suit, plus interest.

(7) On its seventh claim for relief, the costs incurred by Zurich in defending the ECI Suit, plus interest.

(8) On its eighth claim for relief, the costs incurred by Zurich in defending the ECI Suit, plus interest.

(9) Gartner further requests that this court award such further relief as it deems just and appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 14, 2008

**GARTNER, INC.**

By its attorneys,

Frederick S. Gold (Fed. Bar No. ct03560)
fgold@goodwin.com
Laurie A. Sullivan (Fed. Bar No. ct24892)
lsullivan@goodwin.com
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Third Floor
Stamford, CT 06901-3522
Tel: (203) 324-8100
Fax: (203) 324-8199

OF COUNSEL:

Steven L. Schreckinger (BBO # 447100)
Jane Guevremont (BBO # 559465)
LYNCH, BREWER, HOFFMAN & FINK. LLP
101 Federal Street, 22nd Floor
Boston, MA 02110
Tel: (617) 951-0800

148728 v.01